## Case No. 3,902.

### Ex parte DIETZ.

[3 App. Com'r Pat. 358.]

Circuit Court, District of Columbia. Aug. 20, 1860.

PATENTS—EQUIVALENTS—REISSUES—LAMPS.

[1. A device for admitting air to the lower part of the flame of a lamp through many small holes is a mechanical equivalent of one admitting it through larger apertures, one on each side of the wick-chamber.]

[2. The inventor of the first device applying a certain principle is entitled to a reissue covering a mechanical equivalent of the invention secured by his original patent.]

[This was an appeal by Michael Dietz from the decision of the commissioner of patents, refusing a reissue of a patent for an improvement in lamp-burners.]

MORSELL, Circuit Judge. In his specification, Dietz says: "Having thus described my invention. what I claim as new in flat wick lamps, and desire to secure by letters patent is, an air-chamber in combination with the chamber formed by the concavity of the deflector of a lamp top, substantially as described. I also claim the combination of an air-chamber for supplying air to the interior of the cone for openings for the admission of air on the outside of the cone, between the latter and the inside of the chimney substantially as set forth."

The commissioner, in his decision, dated March 16, 1860, adopts the report of the examiners, dated March 5, 1860, which, in substance, states: "That said Dietz has failed to show either that the point taken by the examiner as to the introduction of new matter, or as to the sufficiency of the references, was not justified by the facts, and therefore [not] well taken. Is there in the records of applicant's invention, as patented, anything suggesting the alternative or variant forms of construction he now describes, and seeks to claim as his own, in the manufacturing of lamps? An inspection of them clearly shows there is not, and that is conclusive of the question; for the law, as we understand it, alike with the rules of this office and its uniform practice, prohibits a reissue of a patent for anything save the invention which was described or shown in the patent; that is to say, described in the specification annexed thereto, or shown in the model or drawings; and in neither of these records, we repeat, are there to be found any data authorizing the expansion of the invention into the proportions applicant now seeks to make it assume; hence the first and second claims he now presents are certainly—we are not sure the third is not, also—inadmissible, because based upon the introduction of new matter, for which there is no warrant." The subsequent part of the report is not recited, for the reasons which will hereafter appear.

Reasons of appeal have been filed, sufficient to cover all the points of error supposed to exist in the decision of the commissioner. The report of the commissioner in reply to the reasons is in substance the same as just recited. With this state of the case, the commissioner, according to previous notice, laid before me all the original papers relating to the case, together with the depositions of witnesses, submitted to him by the appellant, the reasons of appeal, and his report, and the case was submitted upon the written argument of the appellant's counsel. On a hearing before me previous to the filing said argument, Mr. Clark, the examiner, was present, and, after an examination and comparison of the Dyott lamp, which the appellant's counsel had made, with the drawing of the rejected application, said that he was satisfied that he was mistaken with regard to the Dyott lamp, and the same was not an anticipation of the lamp which is the subject of this case. The only point, therefore, open for my consideration, is whether the case shown by the appellant is within the statutes authorizing reissue in the absence of all fraudulent or deceptive intention.

The commissioner's objection is that there are no data to be found in the record of applicant's invention, as patented, authorizing the expansion of the invention by the alternative or variant forms of construction into the proportions applicant now makes it assume; or according to the official letters referred to by him, more definitely stated: "The new matter introduced into your (applicant's) application for the reissue of the patent granted you March 8, 1859, as indicated by the pencil marks on the 8th page, amounts to the substitution of a new invention not contemplated in your original application. The patent covers, not only the apertures in the plate between the two chambers, but those apertures in a certain relative position, viz. at the sides of the wick-tube. A special advantage was claimed for that particular arrangement, and it is evident that apertures in that situation will not admit of the same operation as if made elsewhere in the plate, or the same as if the plate was wholly dispensed with." The part of applicant's description above alluded to states that: "Instead of their being but two apertures formed in the upper plate communicating with the air-chamber, d, and the chamber, O, as many small apertures may be formed as may be deemed advisable, in which event. the lower series of holes, y, may be omitted altogether without materially affecting the burning of

the lamps, care being taken to make the openings in the upper plate of a sufficient size and number to supply the requisite amount of oxygen to the flame, or the whole upper plate may be removed entirely, in which case the size of the openings of the air-chamber communicating with the open air should be lessened and their number increased so as to steady and regulate the supply, and the depth of the chamber, if anything, increased, so as to give time to the air to diffuse itself throughout the chamber previous to its passage upwards into the cone chamber above; it would thus enter in a diffused state, cooling the wick-tube in its ascent, and in a measure acquiring the requisite degree of heat before mixing with the flame to promote combustion."

To be enabled to determine what is the extent of the improved patented invention which has been surrendered, it will be necessary to consider the import of the specification which accompanies it. It states that the patentee's "improvement relates more especially to that class of lamps with flat wicks which are provided with a deflector, as now in common use for burning coal or carbon oil, and other such fluids. These lamps, as heretofore constructed, are in so far defective as that the flame is not perfectly steady and regular, and the light not always so clear and brilliant as might be desired; which in a great measure is to be attributed to the manner in which the air is supplied to the flame. The fresh air from the outside, as it enters at the sides through a series of apertures provided for this purpose in the chimney-band, being repulsed at first by the heated air of the inside, rises up along the sides of the deflector, thus establishing a continuous current, which flows only along the boundaries of the inner space under the deflector, thus only coming in contact and commingling with the gaseous products at the upper part of the flame above the wick; no air, or at least a very small portion, flowing in at the bottom of the flame, close to the wick. Again, by the peculiar shape of the deflector or cone which encloses the wick tube, a large portion of the caloric produced by the flame is absorbed and retained by the burner; the wick-tube becomes so highly heated that it causes the burning fluid to evaporate more rapidly than is necessary for the regular supply of the flame. To obviate which defects is the object of my present improvement, and it consists in forming the lower part of the top into an air chamber, near the bottom of which a series of holes are pierced for the admission of fresh air, at the upper part of which a narrow aperture is left on each side of the wick-tube for the passage upwards of the air from the air-chamber beneath, by means of which a continuous current is established, running upwards along the wick-tube, cooling the latter as it passes up, and bringing the air to a proper temperature previous to its being brought in contact with the gaseous products of the oil at the lower part of the flame, which materially assists in providing a brilliant, steady and regular light." The summary of this claim is in these words: "The arrangement of an air-chamber, a, in the top of a lamp having a flat wick, when said lamp is provided with a cone or deflector, B, for feeding air to the flame, and the air-chamber, D, with a series of holes for the admission of fresh air, and openings, f, for its passage upwards along the sides of the wick-tube, or their, or either of their, equivalents, in the manner and for the purposes substantially as set forth."

Upon taking a careful view of the invention as set forth in the patent as at first recited, and compared with the particularly objectionable part as set forth in the official letter referred to, and the application in this case, it really seems to me that the question is narrowed down to a very small compass. As understood, it is because of a substituted number of perforated holes in lieu of the openings immediately on each of the sides of the wick-tube for the admission of the external air to pass up to the flame at certain points thereof as stated, in a better modified, regulated and directed form, from the air chamber, D, &c., that this is said to be a different mechanical arrangement and a new invention. It is true they are not made immediately on each side of the wick-tube, but they are on the same plate, almost as near, and operate for the like purpose and to effect a like object. Are they not then to be considered as equivalents? If so, it is expressly provided that they may be used if deemed proper by the patentee. That such an arrangement ought to be considered an equivalent, I shall state Circuit Justice Washington's idea, expressed in the case of Gray v. James [Case No. 5,718]. The judge says: "But we think it may be safely laid down as a general rule that where the machines are substantially the same, and operate in the same manner to produce the same result, they must be in principle the same. I say 'substantially' in order to exclude all formal difference; and when I speak of the same result I must be understood as meaning the same kind of result, though it may differ in extent; so that the result is the same, according to this definition, whether the one produce more nails, for instance, in a given space of time, than the other, if the operation is to make nails."

This case, I think, shows that although the holes or arranged device may not be of the same form, number or precise place, if the operation be of the like kind, the admission of external air for a like object and purpose, though it may be, to perfect that purpose, they are to be considered equivalents.

But again the invention is not for a particular arrangement of openings for the admission of air through the upper plate, for I think it has been fully shown that if the

plate were entirely removed the object sought could be attained by other means of a like kind. The real truth is that the patent, as well as the reissue applied for in this case, is for the application of a principle, not naked, but a patentable principle, and of course the rule laid down by the commissioner does not apply. See Curt. Pat. § 239.

The principle in the reissue applied for is nothing more than a more full development of the same principle that has been patented. The operation, purpose and object in both are of the same kind. [As to] the method or mode of attaining the object, the rule, as laid down in Curt. Pat. § 229. is "that, whenever the real subject covered by the patent is the application of a principle in arts or manufactures, the question of an infringement will be as to the substantial identity of the principle and of the application of the principle, and consequently the means, machinery, forms or modifications of matter made use of will be material only so far as they affect the identity of the application."

I think there is error in the commissioner's decision, upon both points, and the same is therefore hereby reversed, and a direction given to grant a patent to the appellant for the reissue, as prayed.